1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David V. Simpson, | No. CV-05-2012-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Jo Anne Barnhart, Commissioner of the Social Security | |
| Defendant. | |

Plaintiff David V. Simpson ("Plaintiff" or "Mr. Simpson") seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits. 42 U.S.C. § 405(g).

**I.   Procedural History**

On March 14, 2003 Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income. (Transcript ("Tr.") 45-47). Plaintiff alleges an onset date of October 1, 2002. (Tr.45). Plaintiff's application was denied initially and upon reconsideration. (Tr.25-33). Plaintiff requested a hearing and on August 26, 2004, the Administrative Law Judge ("ALJ") conducted a hearing. (Tr.252-290). Attending the hearing were Plaintiff, his counsel and a vocational expert. (Id.). On September 24, 2004, the ALJ rendered his decision finding Plaintiff not "disabled." (Tr.18-23). Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied. (Tr.6-8). Plaintiff filed his Complaint in this Court on July 6, 2005. (Dkt.#1).

## II. Background Facts

### A. Plaintiff's Medical History

At the time of the hearing in front of the ALJ, Plaintiff was a 42-year old man weighing approximately 185 lbs. and 6'0 feet tall. (Tr. 260). Sometime in 1998 Plaintiff was involved in an automobile accident in which his head went through the windshield of his vehicle. (Tr. 181). Subsequent to the accident, Plaintiff reported experiencing severe symptoms in the form of headaches and back pain and was treated by several physicians. (Tr.181).

On February 25, 2003, Plaintiff was examined on one occasion by N.R. Chandragiri, M.D., a neurologist by referral from Plaintiff's primary care physician, Mark Friedman, M.D. (Tr.181). Dr. Chandragiri recorded Plaintiff's complaints regarding severe headaches as well as noted that Plaintiff was taking a large number of medications, including consumption of approximately 400 Tylenol tablets per week (10 tablets at a time, every three to four hours). (Tr.181). Dr. Chandragiri suggested referral to a pain specialist and noted that Plaintiff may be a good candidate for "Oxycontin or Duragesic patch."[1]   (Tr.181).

On April 16, 2003, Plaintiff began receiving treatment from Richard J. Ruskin, M.D. of the Desert Pain Institute after referral from Dr. Friedman  (Tr.207-08). Plaintiff was diagnosed with cervicogenic headaches and possible discogenic pain.[2] (Tr. 208). On June 13, 2003, Dr. Ruskin performed a procedure ("Cervical Facet Injection") whereby he made an injection into the Plaintiff's spine to alleviate the pain. (Tr. 206). However, Plaintiff reported that it did not alleviate the pain. (Tr.205). On October 1, 2003, Plaintiff received another injection into his spine to alleviate the pain; (Tr.204), however, it also appears to have been unsuccessful in reducing Plaintiff's pain. (Tr.201). Finally, on December 11, 2003, Dr. Ruskin performed an "Occipital nerve block" (Tr.200), which also appears to have

---

[1] These medications are prescribed to patients experiencing chronic pain.

[2] Discogenic pain is thought to be due to degeneration, or wearing out, of the lumber intervertebral discs in the back.

- 2 -

1  been unsuccessful. (Tr.199). Dr. Ruskin recommended that Plaintiff see a neurologist who
2  specializes in headaches for other suggestions. (Tr.199). During the course of his treatment
3  of Plaintiff, Dr. Ruskin also prescribed Duragesic.

4  On May 14, 2003, Joelle J. Oizumi, Ph.D, a psychologist was appointed to examine
5  Plaintiff. (Tr.175). After examining and consulting with Plaintiff, Dr. Oizumi diagnosed
6  Plaintiff with "Major depressive disorder, recurrent and anxiety disorder NOS." (Tr.177).
7  Dr. Oizumi reported that Plaintiff's "cognitive functioning is generally in tact with the
8  exception of mild impairment in attention and concentration and abstract thinking." (Id.).
9  However, Dr. Oizumi further opined that Plaintiff was "likely to have trouble adhering to a
10 schedule or working independently due to depression and lack of motivation." (Tr.177). He
11 reported on a separate form that Plaintiff possessed "fair" abilities in dealing with work
12 stress, behaving in an emotionally stable manner and reliability. (Tr.179-80). "Fair" is
13 defined as "seriously limited but not precluded." (Id.).

14 On August 4, 2003, Plaintiff was examined by Francis A. Enos, Ph.D. Dr. Enos
15 completed a Mental Residual Functional Capacity (RFC) assessment form. (Tr.106-08) and
16 a Psychiatric Review Technique form (PRTF). (Tr.110-23). On the RFC form Dr. Enos
17 opined that "[c]laimant can remember and carry out simple to more complex instructions,
18 work cooperatively, travel, avoid hazzards, do personal planning, interact with peers, public
19 and supervisors, and complete a routine work week within his physical limitations" (Tr.108).

20 On August 13, 2003, Plaintiff was examined by James G. Hopkins, M.D. (Tr. 124-
21 131). Dr. Hopkins completed a Physical Residual Functional Capacity Assessment form and
22 concluded that Plaintiff: (1) could "sit, stand and walk" for 6 hours of an 8-hour day; (2)
23 could frequently "lift and/or carry" 10 lbs. and occasionally "lift and/or carry" 20 lbs.; (3)
24 should never climb ropes or scaffolds; (4) could occasionally climb ramp/stairs/ladders; (5)
25 could frequently balance, stoop, kneel and crouch and occasionally crawl; and (6) should
26 avoid extreme cold/heat, noise, vibration, fumes, odors, dusts, gases, etc. (Tr.128)

27 On November 24, 2003, Plaintiff began receiving treatment from Angelo Chirbin,
28 M.D., of Phoenix Pain Management Center. (Tr. 222). Dr. Chirbin prescribed Plaintiff MS

1  Contin and Morphine Sulfate for immediate release for "breakthrough pain." (Id.). Over the
2  course of his treatment of Plaintiff, Dr. Chirbin added other medications to treat Plaintiff's
3  pain, such as Imitrex and Lorazapam on April 29, 2004.[3] (Tr.214). These medications were
4  continued over five additional visits through August of 2004 (Tr.213, 212, 211, 210 and
5  209) at the conclusion of which Dr. Chirbin prescribed Indocin, another pain medication.
6  (Tr.209). Dr. Chirbin further remarked in his notes that Plaintiff be referred to "Barrows for
7  neurological opinion." (Tr.209).

During the course of his treatment with Dr. Chirbin, Plaintiff was hospitalized for an "oral morphine overdose" at St. Joseph's hospital on or about May 21, 2004. (Tr. 231). On May 25, 2004, Plaintiff presented to Maricopa Medical Center with "right lower back pain with radiation into the right lower quadrant of the abdomen. (Id.). Plaintiff was treated by Stanley Robinson, M.D., who determined that Plaintiff had "no localized tenderness" in his back and had a "full range of motion of the back without pain." (Id.).

**B.  Hearing Testimony**

At the hearing on August 26, 2004, Plaintiff offered his own testimony regarding the severity of his pain. He testified that he was not able to sustain employment and continued to suffer daily headaches "like razor blades." (Tr.271). He further described his headaches in pertinent part:

> It's two types and they happen all happen at the same time. The one is constant. It's a low-grade constant headache that's completely over my whole head. It's just constantly there. It never goes away. The big one - which that one I can seem to handle pretty good. The big one, which happens approximately six to ten times a day is, it feels like razor blades. It starts on the upper left corner of my head here, scalp, and it shoots like razor blades all the way across the back of my head and goes down my back.

(Tr.271-72).

Plaintiff further testified that most of his days were spent laying down and in May 2004, Plaintiff attempted suicide because he was "tired of the headaches." (Tr.273). Plaintiff testified that because of the combination of the headaches, medication and pain that he could

---

[3] Imitrex is a migraine medication and Lorazapam is prescribed to help with sleep.

- 4 -

only drive a minimal amount (Tr.261-62), infrequently shopped for himself and infrequently prepared his own meals. (Tr. 281).

Ms. Marilyn Kinnier ("Ms. Kinnier"), the vocational expert also testified at the hearing. Several hypotheticals were posed to her. Ms. Kinnier testified that in looking only to the findings of Dr. Hopkins that Plaintiff could sustain work as a photographer and electronics trainer. (Tr.282-83). Ms. Kinnier also testified that based upon the findings of Dr. Oizumi regarding Plaintiff's trouble "adhering to a schedule or working independently due to depression and lack of motivation" that Plaintiff would be precluded from working on a sustained basis. She also testified that this inability to work would be further supported by serious limitations regarding "dealing with stresses, behaving in a emotionally stable manner and demonstrating reliability." (Tr.287). Lastly, Ms. Kinnier testified that when accepting the limitations set forth in Plaintiff's own testimony regarding the severity and frequency of Plaintiff's headaches that such limitations "would preclude the ability to work on a sustained basis." (Tr.287).

### C.     The ALJ's Conclusion

In his decision dated September 24, 2004, the ALJ found that Plaintiff did not qualify for disability. Specifically, the ALJ determined that "the claimant's anxiety, disorder, mild, history of headaches, affective disorder, mild, possible Oxycontin addiction, and mild back disorders are severe within the meaning of the Regulations but not severe enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (Tr. 19). The ALJ cited the Plaintiff's testimony regarding the severity of his symptoms but noted that on May 25, 2004, Plaintiff presented before Dr. Robinson and appeared "in no acute distress, with full range of motion of the back and without pain or localized tenderness." (Tr.20). The ALJ found that Plaintiff's "continued complaints of chronic and severe pain absent supportive objective clinical and/or laboratory findings, in combination with his pain medication overdoses, suggests an exaggeration of pain complaints and possible narcotic seeking behavior, which further undermines the [Plaintiff's] credibility." (Id.). The ALJ also noted that the Plaintiff is able to drive, perform

1  household chores, shop independently, prepare his own meals, ride his bicycle, hike,
2  participate in sports and enjoy board games, thus further undermining his credibility. (Id.).
3  The ALJ stated that he gave Dr. Oizumi's findings "greater weight" based upon the
4  "objective nature of Dr. Oizumi's examination and his consistency with the greater objective
5  record." (Tr. 21). The ALJ concluded that Plaintiff could "sit, stand, and walk for six hours
6  a day each and lift and carry ten pounds frequently and twenty pounds occasionally, and
7  occasionally bend, stoop, kneel, crouch, balance, and crawl, with environmental restrictions
8  including avoiding noise and vibration of extreme temperatures." (Tr. 21). Thus, the ALJ
9  determined that Plaintiff could perform his past relevant work as an electronics trainer and
10 photographer. (Tr. 22).

**III.    Standard of Review**

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

(1) determine whether the applicant is engaged in "substantial gainful activity;"

(2) determine whether the applicant has a "medically severe impairment or combination of impairments;"

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

**IV. Discussion**

Plaintiff asserts that the ALJ erred in three areas in reaching his decision. Specifically, Plaintiff contends that the ALJ erred by: (1) adopting the opinion of Dr. Oizumi but ignoring the vocational expert testimony given based upon Dr. Oizumi's findings; (2) relying on assessments of the non-testifying state agency physicians; and (3) improperly discrediting Plaintiff's testimony without providing clear and convincing reasons for rejecting it.

**A. The ALJ's Treatment of Dr. Oizumi's Findings**

In reaching his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ cited the opinion of the state examining psychologist, Dr. Oizumi. As noted above, Dr. Oizumi diagnosed Plaintiff with Major Depressive Disorder, Recurrent and Anxiety Disorder. (Tr.177). Dr. Oizumi opined that Plaintiff was "likely to have trouble adhering to a schedule or working independently due to depression and lack of motivation." (Tr.177). Dr. Oizumi also opined that Plaintiff possessed "fair" abilities in dealing with work stress, behaving in an emotionally stable manner and reliability. (Tr.179-

- 7 -

80). In explaining his decision, the ALJ noted that "[t]he undersigned gave [Dr. Oizumi's] opinion greater weight in this decision based upon the objective nature of Dr. Oizumi's examination and his consistency with the greater objective record." (Tr.21).

Plaintiff argues that even though the ALJ supposedly gave Dr. Oizumi's testimony "greater weight" the ALJ's treatment of Dr. Oizumi's opinion constitutes error when considering it in conjunction with the vocational expert's testimony. Plaintiff notes that the vocational expert, Ms. Kinnier, testified regarding the application of Dr. Oizumi's findings in relevant part:

> Q: Where Dr. Oizumi says the following. He is likely to have trouble adhering to a schedule or working independently due to depression and lack of motivation. So likely to have trouble adhering to a schedule and working independently. Would you agree that someone who has trouble adhering to a schedule or working independently would be precluded from working on a sustained basis?
>
> A. Yes.
>
> Q: And that inability to work on a sustained basis would only be reinforced if there were also serious limitations regarding dealing with work stresses, behaving in an emotionally stable manner and demonstrating reliability?
>
> A. Yes.

(Tr.287).

Thus, Plaintiff argues that even though the ALJ supposedly gave Dr. Oizumi's opinion "greater weight" the ALJ essentially rejected some of Dr. Oizumi's findings because had he applied Dr. Oizumi's findings to Plaintiff's case, the ALJ would have been forced to find the Plaintiff disabled.

Defendant, on the other hand, argues that the ALJ did not err in the treatment of Dr. Oizumi's evaluation of Plaintiff. Defendant notes that the ALJ properly relied in part upon the findings of Dr. Oizumi. Specifically, that Plaintiff could "understand, remember, and carry out simple instructions and repetitive tasks, use judgment in making work-related decisions, make personal plans, and respond appropriately to supervisors, co-workers, work-situations, and deal with changes in a routine work setting. (Tr. 177-180, 20-21)

1  (Defendant's Response, p.4).  Moreover, Defendant states that Dr. Oizumi did not suggest
2  that Plaintiff was disabled.
3        The Court does not find the Defendant's argument that the ALJ properly selected
4  certain findings from Dr. Oizumi's examination persuasive. It is within the ALJ's authority
5  to reject certain findings from examining or treating physicians or psychologists, provided
6  the ALJ provides the proper reasons for doing so.  In the instant case, it is apparent that the
7  ALJ rejected that part of Dr. Oizumi's findings regarding Plaintiff's "trouble adhering to a
8  schedule or working independently due to depression and lack of motivation."   This is
9  evidenced by the fact that the vocational expert testified that if such circumstances existed
10 Plaintiff would be precluded from working on a sustained basis.  (Tr.287).
11       In disability cases, "greater weight is accorded to the opinion of an examining
12 physician than a non-examining physician." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir.
13 1995).  The Commission may reject the uncontradicted opinion of a treating or examining
14 physician or psychologist by providing clear and convincing reasons supported by substantial
15 evidence in the record.  <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830-31 (9th Cir. 1995).  Moreover,
16 even if the examining physician's opinion is contradicted it can only be rejected for specific
17 and legitimate reasons that are supported by substantial evidence in the record. <u>Id.</u>
18       In reviewing the record and the ALJ's findings regarding his rejection of Dr. Oizumi's
19 findings that Plaintiff had "trouble adhering to a schedule and working independently..." it
20 is apparent that the ALJ did not set forth sufficient reasons for rejecting such findings.  These
21 limitations are clearly cited by Dr. Oizumi; however are simply  not addressed or referenced
22 within the ALJ's decision.  Such omission is clearly relevant in light of the vocational expert's
23 determination that such limitations would  preclude Plaintiff from working on a "sustained
24 basis." (Tr. 287).  Thus, because the ALJ failed to give the requisite "clear and convincing"
25 or even "specific and legitimate" reasons for rejecting relevant aspects of Dr. Oizumi's
26 findings, the ALJ's determination is in error in this respect.
27       **B.**    **ALJ's Treatment of Plaintiff's Testimony**
28       Plaintiff alleges that the ALJ erred by improperly rejecting his testimony regarding

the severity of his symptoms. In rejecting the Plaintiff's testimony the ALJ stated in pertinent part:

> Despite complaints of near-constant headaches and back pain, on May 25, 2004, the claimant presented for follow up examination and appeared in no acute distress, with full range of motion of the back and without pain or localized tenderness. (Exhibit 16F). The claimant's continued complaints of chronic and severe pain absent supportive objective clinical and/or laboratory findings, in combination with his pain testimony medication overdoses, suggest an exaggeration of pain complaints and possible narcotic-seeking behavior, which further undermines the claimant's credibility.
>
> The claimant drives, does household chores, and shops independently (Exhibit 10F, page 2). He also prepares his own meals, rides his bicycle, hikes, participates in sports, and enjoys board games. (Exhibit 8E, page 3). The factors demonstrate the claimant is capable of greater levels of activity than alleged and undermine his credibility.

(Tr. 20).

Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample, 694 F.2d at 642. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)  (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986)). "Unless, there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing'" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Lester 81 F.3d at 834. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834

In the instant case, there is objective medical evidence of an underlying impairment. For instance, in April 2003, Dr. Ruskin diagnosed Plaintiff with cervicogenic headache and possible discogenic pain. (Tr. 208). In November 2003, Plaintiff was diagnosed by Dr. Chirbin with post-traumatic headaches and back pain. (Tr. 222).  Additionally, there is no affirmative evidence demonstrating that the Plaintiff was malingering. As such, the ALJ was obligated to provide "clear and convincing" reasons for rejecting or discounting the Plaintiff's testimony regarding the severity of his pain. Reddick, 157 F.3d at 722.

In rejecting Plaintiff's testimony regarding the severity of his impairments the ALJ failed to set forth the requisite "clear and convincing" reasons. For example, the record reveals that the ALJ relied primarily on the evaluation performed on Plaintiff at the Maricopa Medical Center on May 25, 2004, four days after Plaintiff was discharged from St. Joseph's hospital for an "oral morphine overdose." (Tr.231). The ALJ noted that the objective findings of the doctor did not reveal an "acute distress" and that Plaintiff had a "full range of motion of the back without pain." (Id.). However, the reliance on this medical record is not sufficient to demonstrate "clear and convincing" reasons for rejecting the Plaintiff's testimony regarding the severity of his symptoms. The ALJ wholly disregarded other relevant medical opinions from Plaintiff's treating physicians suggesting Plaintiff's pain to be significant. For instance, Dr. Ruskin, Plaintiff's treating physician, repeatedly attempted to address Plaintiff's pain problems.(Tr.208, 206, 205, 204, 201, 200, 199) which seemed to have little positive impact. Dr. Ruskin finally recommended that Plaintiff see a neurologist who specializes in headaches for other suggestions. (Tr.199). The ALJ also did not mention the treatment given by Dr. Chirbin of the Phoenix Pain Center commencing in November of 2003. Dr. Chirbin diagnosed Plaintiff with "post-traumatic headaches and cervical, dorsal and lumbar pain" and prescribed strong pain medications such as MS Contin and Morphine Sulfate. (Id.). Dr. Chirbin further supplemented Plaintiff's medication with Imitrex and Indocin (Tr.214). These medications were continued for a significant period of time at the conclusion of which Dr. Chirbin remarked in his notes that Plaintiff be referred to "Barrows for neurological opinion." (Tr.209).

Despite the extensive treatment history provided by Dr. Ruskin and Dr. Chirbin, the ALJ did not mention their treatment when discounting Plaintiff's credibility regarding the severity of his symptoms. Rather, the ALJ relied exclusively relied on the examination by Dr. Robinson of the Maricopa Medical Center on May 24, 2004. At the very least, there is a heavy contradiction between the continued treatment given by Dr. Ruskin and Dr. Chirbin and the examination performed by Dr. Robinson regarding Plaintiff's pain. However, the ALJ did not address this contradiction. (Tr.20).

1          In addition, the ALJ's further findings regarding the Plaintiff's daily activities are also
2  not significant or persuasive in providing "clear and convincing" reasons rejecting Plaintiff's
3  testimony.  The ALJ noted that the Plaintiff "drives, does household chores, shops
4  independently, ... prepares his own meals, rides his bicycle, hikes, participates in sports and
5  enjoys board games." (Tr. 20).  However, it is well settled in the Ninth Circuit that "the mere
6  fact that a plaintiff has carried on certain daily activities ... does not in any way detract from
7  her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in
8  order to be disabled." Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004) (citing Vertigan v.
9  Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  A review of the overall record reveals that
10 Plaintiff performed very basic duties such as housecleaning, cooking and shopping for short
11 periods of time which are sometimes interrupted by headaches. (Tr. 281, 176, 87-89).  In
12 addition, it appears that the Plaintiff's driving capability was quite limited due to his pain.
13 (Tr. 176, 261-62).  Finally, the fact that Plaintiff stated on the "Activities of Daily Living
14 Questionnaire" that his hobbies or past times are: biking, hiking, board games, most physical
15 sports, cannot be deemed detrimental to Plaintiff's credibility. (Tr.89).  The question is
16 ambiguous and it is unclear as to whether Plaintiff even understood the question.  Notably,
17 the rest of Plaintiff's answers on the questionnaire are quite contradictory as Plaintiff stated
18 that he is forced to plan his day around the headaches and does not leave the house to engage
19 in social or recreational activities since his condition began. (Tr. 89).  More importantly, the
20 ALJ did not challenge the Plaintiff at the hearing as to his current activities which Plaintiff
21 testified consist of a minimal amount of driving (Tr.261-62), frequently laying down, some
22 housekeeping (Tr. 272) infrequent shopping and that he infrequently prepares his own meals.
23 (Tr. 281).  As such, the entire record reveals that Plaintiff's activities were significantly
24 limited.  Moreover, the ALJ's reliance on the Plaintiff's activities in support of his finding of
25 non-disability do not provide the requisite "clear and convincing reasons" for rejecting
26 Plaintiff's testimony.  At the very least, the ALJ should have questioned Plaintiff regarding
27 his current activities, which appear only to consist of very basic daily activities.
28

1    Thus, this Court finds that the ALJ's conclusion fails to provide the requisite "clear
2 and convincing" reasons for rejecting Plaintiff's testimony regarding the severity of his pain.
3    **C.    Future Handling**
4    In Connett v. Barnhart, 340 F. 3d 871, 876 (9th Cir. 2003), the Ninth Circuit set forth
5 that an award of benefits is discretionary where the reasons for the ALJ's denial are legally
6 insufficient. If the court determines that there are specific findings still to be made then a
7 remand is appropriate. Id. The general rule appears to be that, except in rare circumstances,
8 the court should remand to the agency for additional explanation and investigation. Moisa
9 v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16, 123
10 S.Ct. 353, 154 L.Ed.2d 272 (2002). The rare circumstances that would justify a remand with
11 an entry of an award are: (1) the ALJ failed to provide legally sufficient reasons for rejecting
12 the evidence, (2) there are no outstanding issues to be resolved before determination of
13 disability can be made, and (3) it is clear from the record that the ALJ is required to find the
14 claimant disabled if such evidence is credited. Benecke v. Barnhart, 379 F.3d 587, 593 (9th
15 Cir. 2004). Where this narrow test is met, the relevant testimony will be established to be
16 true and a remand for benefits is proper. Id.

17    In the instant case, upon review of the record, it is apparent to the Court that the ALJ
18 improperly rejected the testimony of Plaintiff regarding the severity of his symptoms. In
19 such circumstances, the Plaintiff's testimony will be credited as true. In crediting this
20 testimony as true it is clear that the Plaintiff qualifies for benefits as the vocational expert
21 testified that Plaintiff's symptoms would preclude his ability to work. (Tr. 287). See Lester
22 81 F.3d at 834 (stating "where the ALJ improperly rejects the claimant's testimony regarding
23 his limitations, and the claimant would be disabled if his testimony were credited, 'we will
24 not remand solely to allow the ALJ to make specific findings regarding that testimony;'
25 ...that testimony is also credited as a matter of law.").

26    In addition, the ALJ did not properly reject the pertinent findings of Dr. Oizumi
27 regarding Plaintiff's work limitations based upon Plaintiff's difficulty adhering to a schedule
28 or working independently due to depression and lack of motivation. When crediting these

findings as true, as this Court is obligated to do, it appears that Plaintiff would also be precluded from work. (Tr. 287). Id. (stating that "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'"). Therefore, it is apparent to the Court that there would be no further issue for the ALJ to consider if this matter were remanded, other than to make an award of benefits for Plaintiff. Therefore, this is one of the limited circumstances in which a remand is not appropriate.[4]

**Accordingly,**

**IT IS HEREBY ORDERED** Plaintiff's Motion for summary judgment is granted. (Dkt#14).

**IT IS FURTHER ORDERED** Defendant's Motion for summary judgment is denied (Dkt.#18).

**IT IS FURTHER ORDERED** that this matter be remanded to the Secretary for an award of benefits to Plaintiff.

DATED this 25th day of September, 2006.

_____
Mary H. Murgula
United States District Judge

---

[4] Because of the impact of this Court's finding that the ALJ did not properly address and reject Plaintiff's testimony as well as did not properly reject Dr. Oizumi's findings, the Court will not reach the merits of Plaintiff's argument regarding the ALJ's reliance on the assessments of the non-testifying state agency physicians.

- 14 -